THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID WILLIAM TURPEN, | CASE NO. C22-0496-JCC |
| Plaintiff, | ORDER |
| v. | |
| MUCKLESHOOT TRIBAL COURT, *et al.*, | |
| Defendants. | |

This matter comes before the Court on the parties' cross-motions for summary judgment (Dkt. Nos. 45, 49). Having thoroughly considered the briefing and relevant record, and having taken oral argument under advisement, the Court hereby DENIES Plaintiff's motion (Dkt. No. 45) and GRANTS Defendants' motion (Dkt. No. 49) for the reasons explained herein.[1]

### I.   BACKGROUND

Katherine Arquette Turpen ("Ms. Turpen") is an enrolled member and elder of the Muckleshoot Indian Tribe ("Tribe"). (Dkt. No. 49-1 at 8–9.) She filed a petition to dissolve her marriage to Plaintiff in the Muckleshoot Tribal Court ("Tribal Court") on March 16, 2021. Plaintiff, a non-Indian, was an employee of the Tribe from approximately 2005 to 2018. (Dkt.

---

[1] In his reply (Dkt. No. 47) to Defendants' opposition brief (Dkt. No. 46), Plaintiff raises arguments not included in his motion. A moving party may not raise new facts or arguments in a reply. *See United States v. Puerta*, 982 F.2d 1297, 1300, n.1 (9th Cir. 1992). Accordingly those new arguments are STRICKEN.

Nos. 49-3 at 5, 49-1 at 48.) The Turpens were married in King County, outside the bounds of the Muckleshoot Indian Reservation ("Reservation"), in May 2014. (Dkt. No. 49-1 at 48.) Prior to their marriage, they lived on the Reservation in a home leased to Ms. Turpen by the Muckleshoot Housing Authority. (*Id.*) In December 2013, the Turpens moved to a home outside the Reservation. (*Id.*) This home was similarly leased to Ms. Turpen by the Muckleshoot Housing Authority. (Dkt. No. 49-2 at 2.)

In June 2014, the couple purchased a home outside the Reservation in Auburn, Washington. (*Id.*) The Turpens resided there for several years, until they separated in 2021. (*Id.*) Due to Ms. Turpen's status as a member of the Tribe, the couple received financial assistance for the home purchase. (Dkt. No. 49-1 at 54.) They received an income-based grant for the down payment, as well as loan assistance. (Dkt. No. 49-2 at 4–11.)  In April 2015, the Turpens, acting as a married couple, executed a deed of trust and pay back agreement, which provided that the Tribe would help pay for the home if it remained the principal residence of Ms. Turpen for at least 15 years. (Dkt. No. 49-2 at 4.) Specifically, every year, the Tribe would reduce the amount Ms. Turpen needed to pay back by 7% annually. (*Id.*)

On March 16, 2021, Ms. Turpen filed a petition for dissolution of the marriage in the Muckleshoot Tribal Court. (Dkt. No. 49-1 at 8–10.) On March 19, the Tribal Court issued a temporary restraining order, granting Ms. Turpen possession of the Auburn residence and ordering Plaintiff to remove himself from the premises, pending a hearing on the dissolution petition set for March 30. (*Id* at 11.) Plaintiff claims he was never served and did not receive actual notice of the pending hearing until an acquaintance told him about it. (*Id.* at 37.) He then contacted the clerk at the Tribal Court on March 29, requesting a copy of the summons, petition, and temporary restraining order. (*Id.* at 150.) The Tribal Court clerk sent the requested documents to Plaintiff's e-mail address that day. (*Id.* at 12, 150.) The summons was neither dated nor signed, but was filed with the Tribal Court on March 16, requiring a written response from Plaintiff within 21 days (*Id.* at 10). No certificate of service was filed with the Tribal Court until

1    March 29, when the documents were sent to Plaintiff's e-mail address. (49-1 at 12.)

2        On March 31, Plaintiff and Ms. Turpen attended a hearing at the Tribal Court. (Dkt. No. 49-1 at 14.) Neither was represented. (*Id.* at 150.) Following the hearing, the Tribal Court ordered the parties to attend mediation to determine what should happen to the Auburn residence. (*Id.*) Additionally, Plaintiff was granted a civil standby so he could remove his car from the home without violating the terms of the restraining order. (*Id.*) According to Plaintiff, he objected to the Tribal Court's jurisdiction at the hearing, but had his objection ignored.[2] (Dkt. No. 45 at 4.)

        On April 15, Plaintiff's current counsel filed a notice of appearance with the Tribal Court. (Dkt. No. 49-1 at 21.) Subsequently, Plaintiff filed a response to the dissolution petition, challenging the Tribal Court's jurisdiction over the matter. (Dkt. No. 49-1 at 22–25.) On April 22, the Tribal Court held another hearing, where it struck the upcoming mediation date and scheduled a follow-up hearing for June 15. (*Id.* at 32.) The following day, Plaintiff filed a Petition for Dissolution of the marriage in King County Superior Court. (*Id.* at 151.)

        Plaintiff then moved to dismiss at the Tribal Court, arguing it lacks subject matter jurisdiction over the marriage, personal jurisdiction over Plaintiff, and *in rem* jurisdiction over the home. (*Id.* at 35–45.) After a hearing on the motion, the Tribal Court denied Plaintiff's motion and determined it has subject matter jurisdiction to dissolve the marriage because Ms. Turpen is a member of the Tribe. (Dkt. No. 49-1 at 152.) The Tribal Court also concluded that it has personal jurisdiction over Plaintiff because of "his transactions with the Muckleshoot Tribe and [Ms. Turpen]." (*Id.*) Finally, it concluded that it has jurisdiction over the home because the Tribal Code gives it jurisdiction to resolve matters directly related to the dissolution of a marriage involving a tribal member. (*Id.*) (citing Muckleshoot Tribal Code § 14.01.030). Plaintiff appealed the denial of his motion to the Muckleshoot Tribal Court of Appeals, (Dkt. No. 49-1 at

---

[2] No such objection appears on the record. The Tribal Court did not record the proceedings, but the Muckleshoot Tribal Court of Appeals noted Plaintiff ultimately received notice of the hearing and was allowed access to the Court, which Plaintiff took advantage of. (Dkt. No. 46-1 at 23.)

171–73), which denied the appeal, (*id.* at 245-245).

In April 2022, Plaintiff filed the instant suit against Ms. Turpen, the Muckleshoot Tribal Court, the trial judge, and the appellate judges, asking this Court to vacate the opinion of the Muckleshoot Court of Appeals and enjoin the Tribal Court from asserting jurisdiction over the marital dissolution. (Dkt. No. 1.) Plaintiff now moves for summary judgment on his claim, along with attorney fees and costs. (Dkt. 45 at 1.) Defendants Gary F Bass, Jerry R Ford, Michelle Sheldon, Lisa Vanderford-Anderson, and Muckleshoot Tribal Court cross-moved on those same claims. (Dkt. No. 49.)

## II. DISCUSSION

### 1. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). The nonmoving party "may not rest upon the mere allegations or denials of his pleading . . . ." *Anderson*, 477 U.S. at 248 (citations omitted).

### 2. Subject Matter Jurisdiction

The parties disagree over whether the Tribal Court has subject matter jurisdiction over the marital dissolution. (*Compare* Dkt. No. 45 at 6–8, *with* Dkt. No. 49 at 8–15.) Plaintiff argues that because the couple did not reside on the Reservation, the Tribal Court lacks jurisdiction. (Dkt. No. 45 at 6–7.) Defendants argue the Tribal Court's jurisdiction is based on its inherent, retained sovereign powers. (Dkt. No. 49 at 8.) This Court notes that "[i]ndian tribes still possess those aspects of sovereignty not withdrawn by treaty or statute, or by implication as a necessary

result of their dependent status." *Knighton v. Cedarville Rancheria of Northern Paiute Indians*, 922 F.3d 892, 899 (9th Cir. 2019) (quoting *United States v. Wheeler*, 435 U.S. 313, 323 (1978)). And while this exercise of tribal power generally does not extend to the activities of nonmembers of the tribe, the Supreme Court has created two so-called *Montana* exceptions to this rule. *See Montana v. United States*, 450 U.S. 544, 565 (1981).

The first exception[3] allows a tribe to "regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Id.* (citing cases). A tribe does not have power over a nonmember, "until the nonmember enters tribal lands or conducts business with the tribe." *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 142 (1982). And tribal jurisdiction "depends on what non-Indians 'reasonably' should 'anticipate' from their dealings with a tribe or tribal members on a reservation." *Water Wheel Camp Recreational Area, Inc. v. LaRance*, 642 F.3d 802, 817 (9th Cir. 2011).

Here, Plaintiff entered a consensual relationship with Ms. Turpen, a Tribe member. Prior to the marriage, they lived together on the Muckleshoot Reservation leased to Ms. Turpen by the Tribe. The couple then moved to a home off the reservation, also leased by the Tribe. Subsequently, when the couple purchased a home, they received substantial assistance including an income-based grant for the down payment and loan assistance for the mortgage, which provided that the Tribe would subsidize their housing, so long as Ms. Turpen lived there. It is also not lost on the Court that Plaintiff worked for the Tribe for over ten years. Based on these undisputed facts, Plaintiff entered into a consensual lease with the Tribe. It is quite reasonable for him to anticipate being subject to tribal jurisdiction over the dissolution of the marriage, given the numerous housing support the Tribe provided.

---

[3] The second *Montana* exception, which allows a tribe to exercise jurisdiction where non-member conduct "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe" is not applicable to this case. *Montana*, 450 U.S. at 565.

ORDER
C22-0496
PAGE - 5

Plaintiff argues *Montana* is inapplicable because the parties did not reside on the reservation. (Dkt. No. 52 at 6.) But Plaintiff entered into a consensual marriage with a tribe member, lived and worked on the Tribe's reservation, and consented to numerous contracts directly with the Tribe to help with housing payments. Viewed in totality, this is sufficient to show consent needed for the Tribal Court to have subject matter jurisdiction here. Plaintiff also argues that the State of Washington should have jurisdiction because that is where the marriage is located. (Dkt. No. 45 at 6–8.) But the fact that the state may also have jurisdiction does not automatically preclude the Tribal Court from also having jurisdiction. *See Sanders v. Robinson*, 864 F.2d 630, 633 (9th Cir. 1988). And here, Muckleshoot law states, "[t]he Tribal Court has jurisdiction to dissolve a marriage if one party is a member of the Muckleshoot Indian Tribe. The Court retains jurisdiction to resolve matters pertaining to the dissolution." (Dkt. No. 46-1 at 8–9) (Muckleshoot Tribal Code 14.01.030). Accordingly, the Court concludes the Tribal Court has subject matter jurisdiction to preside over this marital dissolution.[4]

### 3. Personal Jurisdiction

Plaintiff also argues the Tribal Court lacks personal jurisdiction over him because he was never served. (Dkt. No. 45 at 8–9.) Service of process at the Tribal Court is governed by tribal law. (Dkt. No. 46-1 at 13) (Muckleshoot Tribal Code 3A.02.030). And the Tribal Court's interpretation of tribal law is binding on this Court. *See Sanders v. Robinson*, 864 F.2d 630, 633 (9th Cir. 1988).

Here, both the Muckleshoot Tribal Court and the Muckleshoot Tribal Court of Appeals found service was appropriate. (Dkt. No. 46-1 at 19, 23.) The Tribal Court specifically noted that Plaintiff waived any defect in service because he never denied receiving the dissolution petition or summons, he engaged with the Tribal Court, and sought affirmative relief. (Dkt. No. 46-1 at

---

[4] Defendants also cite to a state court opinion to support their argument for jurisdiction. (Dkt. No. 49 at 12–15) (citing *State v. Cent. Council of Tlingit & Haida Indian Tribes of Alaska*, 371 P.3d 255, 262 (Alaska 2016)). Because the Court finds that *Montana* applies here, it need not consider this non-binding authority.

19.) The Muckleshoot Court of Appeals affirmed the lower court's decision that Plaintiff waived service of process. (*Id.* at 23.) It highlighted that Plaintiff was served in a manner of his choosing, which allowed him to gain information quickly, and that he subsequently participated in the Tribal Court proceedings. (*Id.*)

Plaintiff continues to argue that the defects in service should control. (Dkt. Nos. 45 at 8–9, 47 at 5.) And he asserts, without support, that his participation in court-ordered activities constituted a "special appearance." (Dkt. No. 47 at 5.) However, he fails to meaningfully challenge the Tribal Court's conclusion that service was waived on account of his actions. Because the Tribal Court's interpretation of tribal law is binding on this Court, the Court concludes any objections to service were waived by Plaintiff's actions.[5]

### 4. Attorney Fees and Costs

Plaintiff asks the Court to award attorney fees and costs because Defendants' arguments are frivolous. (Dkt. No. 45 at 10–11.) For the reasons stated above, the Court notes Defendants' arguments are not frivolous. But even if Defendants did not succeed on the merits, both sovereign and judicial immunity apply here. A tribe is only subject to suit where Congress has authorized the suit, or the tribe has waived its immunity. *Kiowa Tribe of Oklahoma v Mfg. Tech., Inc.*, 523 U.S. 751, 754 (1998). Because the judges here were acting in their official capacity, sovereign immunity bars the recovery of any fees. Additionally, it is well established that judges are absolutely immune from liability for their judicial acts. *In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2002) (internal citations omitted). Absolute immunity only fails to attach where judicial officers act clearly and completely outside the scope of their jurisdiction. *Demoran v. Witt*, 781 F.2d 155, 158 (9th Cir. 1985) (internal citations omitted). Here, Defendants did not act outside

---

[5] Even if the Court were to apply state law, it would reach a similar result. Objections to service may be waived if inconsistent with the previous behavior of a party. *Lybbert v. Grant County*, 1 P.3d 1124, 1129–30 (2000). Here, Plaintiff received notice of the hearings and interacted in various ways with the Tribal Court, including seeking and gaining affirmative relief. These actions constitute a waiver of the affirmative defense, as Plaintiff's objections are not consistent with his previous behavior before the Tribal Court.

ORDER
C22-0496
PAGE - 7

the scope of their jurisdiction. Accordingly, Plaintiff's claim for fees and costs fails.

### III.     CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for summary judgment (Dkt. No. 45) and GRANTS Defendants' motion for summary judgment (Dkt. No. 49) on all of Plaintiff's claims. Accordingly, the complaint is DISMISSED with prejudice.

DATED this 12th day of July 2023.

John C. Coughenour
UNITED STATES DISTRICT JUDGE